**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **MAGALI HERNANDEZ,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **Civil Action No. 19-1485** |
| | § | |
| **SHARKNINJA OPERATING LLC,** | § | |
| | § | |
| ***Defendant.*** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

Plaintiff, Magali Hernandez ("Plaintiff ") files her Original Complaint against Defendant, SharkNinja Operating LLC ("SharkNinja"), and for her causes-of-action respectfully shows this Court as follows:

**I.**
**PARTIES AND JURISDICTION**

1. The amount involved in this action is in excess of $75,000.00, exclusive of interest and costs. This Court has jurisdiction of this case by reason of the amount-in-controversy and diversity-of-citizenship.

2. Plaintiff, Magali Hernandez, is an individual residing in Bexar County, Texas.

3. Defendant, SharkNinja Operating LLC, is a non-resident Massachusetts corporation engaged in and doing business in the State of Texas. Pursuant to Texas Civil Practice & Remedies Code § 17.044 and Texas Business Organizations Code § 5.251, SharkNinja may be served with process by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701, as its agent for service of process because SharkNinja is engaged in and doing business in the State of

Texas, it does not maintain a registered agent for service process in the State of Texas, and this lawsuit arises out of SharkNinja's business in the State of Texas. The address for service is CT Corporation System, 155 Federal Street, Suite 700, Boston, MA 02110.

4. At all times relevant to the causes-of-action asserted herein, the non-resident Defendant has had continuing and systematic contact with the State of Texas by delivering its products into the stream-of-commerce with the expectation that the products would reach consumers within the State of Texas. Further, Defendant has had minimum contacts with Texas and is doing business in Texas, by, among other things: entering into contracts, by mail or otherwise, with residents of the State of Texas; contracting for performance in Texas; recruiting Texas residents for employment inside and/or outside the state; and committing torts in the State of Texas. The causes-of-action asserted herein arise from such contact and business.

5. Products manufactured by Defendant are routinely sold in the Western District of Texas, San Antonio Division.

6. Defendant purposefully markets and sells its products through local retailers in the Western District of Texas, San Antonio Division, for the purpose of deriving profit and have in fact derived profits from the sale of products in the Western District of Texas, San Antonio Division.

7. Defendant plans to continue selling its products in the future in the Western District of Texas, San Antonio Division.

8. Defendant's liability in this case arises from or is related to the sale and distribution of products in the State of Texas.

9. Accordingly, Defendant has purposefully availed itself of the privileges and benefits of placing its products into the stream of commerce in Texas and thereby conducts business in the State of Texas.

10. The Court's exercise of personal jurisdiction over Defendant comports with due process because it placed a defective product into the stream of commerce in the Western District of Texas and that product caused personal injuries to Plaintiff Magali Hernandez.

## II.
## VENUE

11. At all times material to this incident, the Defendant was and is doing business in and throughout the Western District of Texas.

12. The incident made the basis of this suit occurred in the Western District of Texas, San Antonio Division.

13. The Defendant conducts business and sells its products in and throughout the Western District of Texas, including the San Antonio Division.

14. Venue in this case is proper in the Western District of Texas by virtue of Title 28 U.S.C. § 1391(a)(1)(2) and/or (3). As a corporation, Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. 1391 (c). Therefore, Defendant is subject to personal jurisdiction in the Western District of Texas and for venue purposes is deemed to reside in the Western District of Texas. Furthermore, the incident involved in this case occurred in the Western District of Texas.

## III.
## FACTUAL BACKGROUND

15. Upon information and belief, Defendant SharkNinja has been developing, designing, manufacturing, distributing, and selling Ninja Blenders with a "Stacked Blade Assembly" since at least 2012.

16. The "Stacked Blade Assembly" is a knife-like assembly that is not anchored to the blender pitcher in any way. The "Stacked Blade Assembly" fails to lock in place inside the Ninja Blender

pitcher and can dislodge during use, cleaning, and unpacking thereby exposing users to sudden and direct contact with the knife-like blades described by Defendant as "Total Crushing Technology".

17. Upon information and belief, every type of Ninja Blender developed, designed, manufactured, marketed, and sold by Defendant incorporates the same "Stacked Blade Assembly" with "Total Crushing Technology".

18. Upon information and belief, SharkNinja is the only blender manufacturer that uses a blade assembly that is not locked into the blender pitcher.

18. In November 2015, Shark Ninja issued a voluntary recall of certain types of its Ninja Blenders stating, "the blender poses a laceration risk if consumers pour from or invert the pitcher after removing the lid while the loose stacked blade assembly is still inside the pitcher."[1]

19. Instead of telling consumers to stop using their Ninja Blenders, removing the Ninja Blenders from the market, and incorporating a new design, Defendant chose to give customers a revised safety warning and leave the product on the market unchanged. All Ninja Blenders remained on the market being sold in the same defective condition outlined in the CPSC recall.

20. At the time of the recall, Defendant was aware of at least 53 other similar incidents involving its Ninja Blenders with a "Stacked Blade Assembly" and "Total Crushing Technology".

21. On or about December 31, 2017, Plaintiff, Magali Hernandez, was attempting to unpack a Ninja Blender, Model No. BL660WM, for the first time. While unpacking the Ninja Blender, the unsecured "Stacked Blade Assembly" suddenly and without warning fell out of the blender causing serious and permanent injuries to Plaintiff's left arm and wrist.

22. As a producing and proximate result of the product defects described herein, Plaintiff,

---

[1] See http://cpsc.gov/Recalls2015/laceration-injuries-prompt-sharkninja-to-recall-ninja-BL660-Blenders#

Magali Hernandez, sustained serious and permanent injuries and damages in excess of this Court's minimum jurisdictional limits as described herein.

## IV.
## STRICT PRODUCT LIABILITY

23. Plaintiff hereby incorporates by reference all of the allegations in the preceding paragraphs as if fully set forth herein.

24. At all material times hereto, Defendant, was a "Manufacturer" of the Ninja Blender, Model No. BL660WM, as defined in Chapter 82.001(4) of the Texas Civil Practices and Remedies Code Annotated.

25. The Ninja Blender, Model No. BL660WM, at issue in this suit was designed, manufactured, constructed, marketed and/or distributed by and through the agents and/or representatives of the Defendant.

26. The Defendant was regularly engaged in the business of supplying or placing products, like the Ninja Blender, Model No. BL660WM, in question, into the stream-of-commerce for use by the consuming public, including the Plaintiff. Further, such conduct was solely for commercial purposes.

26. The Ninja Blender, Model No. BL660WM, in question remained unchanged from the time it was originally manufactured, distributed and sold by Defendant until it reached Mrs. Hernandez and ultimately led to Plaintiff's damages. Stated another way, the Ninja Blender, Model No. BL660WM, in question was defective and in an unreasonably dangerous condition when it left the hands of the Defendant and remained defective and unreasonably dangerous at all times thereafter until it ultimately caused Plaintiff's damages.

27. At the time the Ninja Blender, Model No. BL660WM, in question was placed into the stream of commerce, it was, or should have been, reasonably expected and foreseeable that the

Ninja Blender, Model No. BL660WM, in question would be used by persons such as Plaintiff in the manner and application in which it was being used at the time of the incident made the basis of this suit.

28. With respect to the design of the Ninja Blender, Model No. BL660WM, at the time it left the control of the Defendant, there were safer alternative designs. Specifically, there were alternative designs that, in reasonable probability, would have prevented or significantly reduced the risk of injury to Plaintiff. Furthermore, such safer alternative designs were economically and technologically feasible at the time the product left the control of the Defendant by the application of existing or reasonably achievable scientific knowledge.

29. At the time the Ninja Blender, Model No. BL660WM, in question left control of Defendant, it was defective and unreasonably dangerous in that it was not adequately designed or marketed to minimize the risk of injury. By way of example and without limitation, the product in question was unreasonably, dangerously defective in the following ways:

a. the Ninja Blender, Model No. BL660WM, was unreasonably, dangerously, defectively designed in that it was designed with a "Stacked Blade Assembly" that can unexpectedly release from blender pitcher and lacerate the user. This makes the blender unreasonably, dangerously, defectively designed for its intended and reasonably foreseeable uses;

b. the Ninja Blender, Model No. BL660WM, in question was unreasonably, dangerously, defectively designed in that it was not designed with a mechanism that could prevent the "Stacked Blade Assembly" from falling out of the blender pitcher and lacerating the user. This made the blender unreasonably, dangerously, defectively designed for its intended and reasonably foreseeable uses;

c. the Ninja Blender, Model No. BL660WM, in question was unreasonably, dangerously, defectively designed in that it was not properly designed to eliminate the risk and dangers associated with the "Stacked Blade Assembly" unexpectedly releasing from the blender pitcher and lacerating the user. This made the blender in question unreasonably, dangerously, defectively designed for its intended and reasonably foreseeable uses;

d. the Ninja Blender, Model No. BL660WM, in question was unreasonably,

dangerously, defectively designed in that the "Stacked Blade Assembly" with "Total Crushing Technology" is not anchored to the blender pitcher and can inadvertently fall out of the pitcher;

e. the Ninja Blender, Model No. BL660WM, in question was unreasonably, dangerously, defective in that it did not contain adequate instructions or warnings on the proper and safe use of the blender and its "Stacked Blade Assembly". Furthermore, the instructions for use are inconsistent and unclear. This made the blender unreasonably, dangerously, defective for its intended and reasonably foreseeable uses; and

f. the Ninja Blender, Model No. BL660WM, in question was unreasonably, dangerously, defective in that it failed to warn of the risk, nature and extent of danger associated with the "Stacked Blade Assembly" falling out of the blender pitcher and violently lacerating the user. This failure made the blender unreasonably, dangerously defective in that the warnings and instructions provided, if any, were not in a form that could reasonably be expected to catch the attention of the reasonably prudent person when engaged in reasonably foreseeable uses.

30. The above unreasonably dangerous defects in the Ninja Blender, Model No. BL660WM, were the proximate and producing causes of Plaintiff's serious and permanent injuries and damages.

31. If Defendant asserts that it did not manufacture the Ninja Blender, Model No. BL660WM, then Plaintiff asserts that it is liable for the harm caused to Plaintiff because i) the manufacturer of the Ninja Blender, Model No. BL660WM, is not subject to the jurisdiction of this court and/or ii) Defendant actually knew of the defect to the Ninja Blender, Model No. BL660WM, at the time it supplied the product and the Plaintiff's harm resulted from the defect. See TEX. CIV. PRAC. & REM. CODE §82.003(a)(7)(B) and (a)(6).

32. Plaintiff further contends that Defendant is not entitled to a rebuttal presumption that it is not liable for any injury to Plaintiff caused by the formulation, labeling or design of the Ninja Blender, Model No. BL660WM, because it has not established that the Ninja Blender's formulation, labeling and design complied with a mandatory Federal standard or regulation. Additionally, in the event that Defendant does establish compliance with such a regulation or

standard, Plaintiff will present evidence that the standard is inadequate to protect the public from unreasonable risks of injury or damage.

## V.
## NEGLIGENCE & GROSS NEGLIGENCE

33. Plaintiff hereby incorporates by reference all of the allegations in the preceding paragraphs as if fully set forth herein.

34. Defendant has a duty to manufacture, distribute and sell products that are not unreasonably dangerous. Defendant, acting by and through its agents and/or representatives breached this duty and was thereby negligent and grossly negligent, careless and reckless in designing, manufacturing, marketing, distributing and selling the Ninja Blender, Model No. BL660WM, in question with the defects identified above. As a proximate result of one or more of the aforementioned negligent and grossly negligent acts or omissions of Defendant, Plaintiff sustained serious and permanent injuries and damages.

35. Defendant has a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, selling, testing, quality assurance, quality control, and/or distribution of the Ninja Blender, Model No. BL660WM, into the stream-of-commerce, including a duty to assure that the “Stacked Blade Assembly” with “Total Crushing Technology” would not fall out of the blender pitcher and violently lacerate the user.

36. Defendant failed to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, selling, testing, quality assurance, quality control and/or distribution of the Ninja Blender, Model No. BL660WM, into interstate commerce in that Defendant knew or should have known that “Stacked Blade Assembly” with “Total Crushing Technology” could inadvertently fall out of the blender pitcher and violently lacerate the user resulting in serious, permanent injury to the user.

37. The negligence of the Defendant, its agents, its servants, and/or employees include but are not limited to the following acts or omissions:

a. negligently designing the Ninja Blender, Model No. BL660WM, in a manner which posed a serious danger to its users;

b. designing, manufacturing, producing, creating and/or promoting the Ninja Blender, Model No. BL660WM, without adequately, sufficiently, or thoroughly testing it;

c. Defendants knew or should have known that the Ninja Blender, Model No. BL660WM, was unsafe and unfit for use by reason of the dangers it posed to its users;

d. negligently failing to adequately and correctly warn Plaintiff of the dangers associated with the Ninja Blender, Model No. BL660WM;

e. failing to provide adequate and clear instructions regarding use and safety of the Ninja Blender, Model No. BL660WM;

f. negligently advertising and recommending the use of the Ninja Blender, Model No. BL660WM, despite the fact that the Defendant knew or should have known of its dangerous propensities;

g. negligently representing that the Ninja Blender, Model No. BL660WM, was safe for its intended use, when, in fact, it was unsafe;

h. negligently producing the Ninja Blender, Model No. BL660WM, in a manner which was dangerous to its users;

i. negligently assembling the Ninja Blender, Model No. BL660WM, in a manner which was dangerous to its users;

j. failing to use due care in designing and manufacturing the device so as to eliminate the risk of the "Stacked Blade Assembly" falling out of the pitcher and violently lacerating users;

k. designing the Ninja Blender, Model No. BL660WM, with a "Stacked Blade Assembly" that is not anchored or able to be locked to the base of the blender pitcher;

l. failing to accompany its product with proper warnings and instructions.

38. The negligent acts and/or omissions outlined above were the proximate cause of Plaintiff's damages as described herein.

## VI. DAMAGES

39. Plaintiff hereby incorporates by reference all of the allegations in the preceding paragraphs as if fully set forth herein.

40. The unlawful acts and practices described above are and were a producing and proximate cause of Magali Hernandez's serious and permanent injuries. The damages sustained by Plaintiff include, but are not limited to: physical pain and mental anguish sustained in the past and that will, in reasonable probability be sustained in the future; loss of earnings in the past and that, in reasonable probability, will be sustained in the future; disfigurement sustained in the past and that, in reasonable probability, will be sustained in the future; physical impairment sustained in the past and that, in reasonable probability, will be sustained in the future; and medical care in the past and medical care that, in reasonable probability, will be sustained in the future.

## VII. JURY DEMAND

41. Plaintiff respectfully requests that a jury be impaneled to decide the factual issues of this case.

## VIII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that upon final trial, Plaintiff have judgment against Defendant, for those damages described above and in the full amounts allowed by law, specifically including, but not limited to:

a. a judgment in excess of the jurisdictional limits of this Court;

b. pre-judgment interest;

c. post-judgment interest;

d. costs and expenses; and

e. all such other relief, whether at law or in equity, to which Plaintiff may show herself justly entitled.

Respectfully submitted,

/s/ Andrew L. Payne
**Andrew L. Payne**
Texas Bar No. 00791416
**PAYNE MITCHELL LAW GROUP**
3500 Maple Avenue
Suite 1250
Dallas, Texas 75219
Telephone: (214) 252-1888
Facsimile: (214) 252-1889
andy@paynemitchell.com

***ATTORNEY FOR PLAINTIFF***